IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| RITA MILLER, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | CASE NO.: |
| v. | CLASS ACTION |
| ALLSTATE INSURANCE COMPANY, an Illinois company, | |
| Defendant. | |

**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff RITA MILLER, individually and on behalf all others similarly situated, alleges the following:

**INTRODUCTION**

1. Plaintiff Rita Miller ("Ms. Miller" or "Plaintiff") brings this action due to the illegal actions of Allstate Insurance Company ("Allstate" or "Defendant"). This action is based on Defendant's unlawful practice of sending text messages to Plaintiff's cellular telephone in direct contravention and violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et. seq.* ("TCPA"), thereby causing invasion of privacy, intrusion upon seclusion, and causing not only inconvenience, nuisance, and disruption of daily lives, but also

1

wasted time and loss of personal and professional productivity, while forcing involuntary usage of consumers' data and SMS plans that result from the receipt of unwanted text message spam.

2. This case involves the prototypical kind of harm that the TCPA was enacted to prevent. Allstate, directly and/or through its agents and subsidiaries, secured phone numbers through data aggregators who purchase phone numbers from websites offering or advertising unrelated products or services. Such data aggregators possess certain data points, often including cell phone numbers, for hundreds of millions of United States citizens.

3. Allstate then created a text message campaign whereby, directly and/or through its agents, Allstate spammed such phone numbers with solicitous text messages ostensibly offering lower premiums for insurance, and delivered such text messages multiple times—in Plaintiff's case, no less than ***nine times***—notwithstanding that Plaintiff and the putative Class Members did not consent to such messages, and notwithstanding that Plaintiff's and putative Class Members' phone numbers were listed on the national "Do-Not-Call" list.

4. The TCPA prohibits, among other practices, sending (1) unsolicited telemarketing and advertising text messages to cellular telephones without prior express written consent and (2) unsolicited telephone solicitation and advertising text messages to cellular telephone subscribers on the Do-Not-Call Registry ("DNC").

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. §1331 because this case involves a question of federal law. Damages and injunctive relief are available under 47 U.S.C. §§ 227(b)(3) and 227(c)(5).

6. This Court also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) et seq. ("CAFA") because there are over 100 class members, there is minimal diversity, the amount in controversy exceeds $5,000,000 at issue and none of the exceptions to CAFA applies.

7. Venue is proper in this District because the Defendant engages in business here and a substantial part of the events or omissions giving rise to this claim occurred here.

## PARTIES

8. Ms. Miller is a natural person who, at all times relevant herein, is and was a citizen of the State of Florida residing in Orange County, Florida.

9. Ms. Miller is, and all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

10. Defendant is an Illinois insurance company because Defendant is incorporated in Illinois and its principal place is 2775 Sanders Road, Northbrook Illinois 60062.

11. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

## THE TELEPHONE CONSUMER PROTECTION ACT

12. Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), in response to a growing number of consumer complaints regarding noxious telemarketing practices.

13. Relevant to the present case, the FCC issued a declaratory opinion in June 2015 confirming, among other things, that 1) internet-to-phone text messages require consumer consent; and 2) text messages are "calls" subject to the TCPA. *Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Red 7961(2015).

14. Consistent with its purpose, the TCPA regulates, among other things, the use of text or "SMS" messaging for telemarketing and advertising purposes, and delivery of unsolicited calls—including text messages—to numbers listed on the DNC registry. The TCPA was designed to prevent telemarketing calls to protect the privacy of citizens. "Voluminous consumer complaints about abuses of telephone technology…prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

15. Despite the prohibitions in the TCPA, unsolicited telemarketing calls thrived, prompting the U.S. Federal Trade Commission (FTC) to open the DNC Registry to comply with the Do-Not-Call Implementation Act of 2003 15 U.S.C. § 6101 et. seq., which was signed into law by President George W. Bush on March 11, 2003. On June 26, the FCC revised the TCPA rules and adopted new rules to provide consumers with several options for avoiding unwanted telephone

solicitations, including the DNC List. Registration for the Do-Not-Call list began on June 27, 2003, and enforcement started on October 1, 2003.

16. Even after implementation of the DNC List, automated telemarketing continues to plague American cellular phone subscribers. "Since 2009, the FTC has seen a significant increase in the number of illegal sales calls….. Internet powered phone systems make it cheap and easy for scammers to make illegal calls from anywhere in the world, and to display fake caller ID information, which helps them hide from law enforcement."[1]

17. The T.C.P.A. creates a private right of action for violations of Section 227(c):

> (5) PRIVATE RIGHT OF ACTION.—A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—.
> (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
> (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or
> (C) both such actions.

18. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), proscribes entities such as Allstate from initiating or causing to be initiated "any telephone solicitation" to someone "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

---

[1] https://www.consumer.ftc.gov/articles/0108-national-do-not-call-registry.

19. 47 C.F.R. § 64.1200(e) clarifies that § 64.1200(c) applies to any entity "making telephone solicitations" to wireless telephone numbers.

20. Thus, anyone whose number is on the DNC Registry and who receives more than one telephone call within any 12-month period is provided by Congress a private cause of action.

21. Nevertheless, spam marketing to telephones is growing exponentially. Because of the actions of companies like Allstate, even taking numbers from 2019, by most estimates there were approximate 60 **billion** telemarketing calls to U.S. citizens. In February 2021, 159 million telemarketing calls were placed ***per day***. Both the FCC and the FTC reported that unsolicited telemarketing calls were the top consumer complaint in 2020.

## FACTUAL ALLEGATIONS

22. Insurance companies, such as Allstate, rely on direct marketing to consumers to increase sales and profits. In some ways, the need to directly target consumers with broad marketing is unique in the insurance industry. Because the premium rates insurance companies can charge consumers is heavily regulated and must be filed and approved by the Florida Department of Insurance—as is true in all states—insurance companies are more limited in their ability to increase market share and profitability than less regulated industries.

23. Because insurance companies are more limited in their ability to distinguish themselves by adjusting the product being sold or the amount for which a product is sold, the primary way in which they can distinguish

themselves is through direct advertising. Indeed, in 2018, the insurance industry ranked fifth among all industries in the amount of money spent on advertising. On retail, telecommunications, automotive, and financial services ranked higher.[2]

24. Unfortunately, Allstate did not stop at marketing via television, radio, social media, etc. Instead, Allstate and/or its agents also implemented a strategy of violating the TCPA by directly spamming consumers with multiple text messages despite the fact that such consumers did not provide any consent for such invasive text messages.

25. Worse, Allstate did not check the phone numbers it spammed against the national DNC registry. Instead, directly or through its agents, Allstate delivered multiple unsolicited telemarketing messages to consumers whose phone numbers were registered with the DNC list.

26. Moreover, at all material times, Allstate was and is aware that its actions and/or the actions of its agents violated the TCPA. Allstate was well aware of numerous complaints—and a few previous class actions—that it and/or its agents acting on its behalf were directly violating the TCPA. Upon information and belief, Allstate was aware of the violative conduct and refused to stop such conduct (or correct such conduct by its agents). The calls were made at Allstate's direction and/or with its approval and for its benefit.

## PLAINTIFF MILLER

---

[2] Of course, the "financial services" industry often overlaps with the insurance industry, in that insurance companies often offer financial services as part of their company portfolio.

27. From May 26 through June 11, Allstate and/or its agents delivered at least ***nine*** text messages to Plaintiff Miller without her consent.

28. Plaintiff Miller's phone number has been registered on the DNC registry since at least 2015.

29. Plaintiff owns and is the primary user of the cell phone number to which the telemarketing text messages were sent. Plaintiff did not provide any consent to be called by Allstate or any of its agents.

30. The text messages all advertised auto insurance plans for lower premiums than the cell phone user's current plan. Four of the text messages included virtually identical language marketing that new "coverage offers" could "decrease your premiums drastically." The other text messages all referenced cutting premiums in half, albeit with slightly different phrasing: premiums at "half of your current plan" or "slashing [premiums] in half" or cutting premiums "by 50%."

31. Defendant is a seller because it is a person or entity on whose behalf the text messages were initiated for the purpose of encouraging the purchase of Allstate insurance products.

32. Defendant is a telemarketer because it initiated the text messages for encouraging the purchase of Allstate insurance products.

33. After the unsolicited text message on May 26, 2021, Ms. Miller called the phone number and an answering service put her through to an Allstate

8

employee. Ms. Miller told Allstate at that time to stop sending telemarketing advertisements.

34. Subsequently, in response to yet another telemarketing text message, Ms. Miller once again called the number, was transferred to an Allstate employee, and once again demanded that Allstate stop sending telemarketing advertisements.

35. In such phone calls, Ms. Miller wasted at least five minutes attempting to prevent further or subsequent calls—to no avail—notwithstanding that her number was already on the DNC registry.

36. Ms. Miller also twice responded with text messages demanding that Allstate and/or its agents acting on its behalf stop spamming her cell phone. Thus, even if Ms. Miller, prior to May 26, consented to telemarketing calls—she did not—Ms. Miller clearly and unequivocally withdrew such consent. Nevertheless, Ms. Miller subsequently received multiple spam calls.

37. Any agents or independent contractors involved in the scheme possessed authority or apparent authority to act Defendant's behalf and for Defendant's benefit. Defendant directed or was actually aware of such conduct and ratified such conduct.

38. Defendant is directly liable, and/or is vicariously liable for the actions of its actual and/or apparent agents, for violating the TCPA.

39. Because Allstate has no method—and/or did not provide any method to its agents—to verify if telephone numbers are on the Do Not Call List,

thousands of numbers on the DNC list were sent multiple spam telemarketing text messages.

40. The rules set forth in 47 C.F.R. § 64.1200(c) are applicable because the text messages were telephone solicitations to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."

41. The aforementioned text messages to Plaintiff were an invasion of privacy, an intrusion upon seclusion, and caused the tangible harm of wasted time, including at least five minutes in phone calls and text message responses to Allstate demanding they stop the harassing and repeated unsolicited telemarketing calls.

42. To redress such injuries, Plaintiff, individually and on behalf of all others similarly situated, brings suit pursuant to the TCPA.

## CLASS ACTION ALLEGATIONS

43. Plaintiff brings this action individually and on behalf all others similarly situated pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

44. Plaintiff seeks representation of a Class defined as:

> All persons within the United States who (a) received more than one text message from Defendant or Defendant's agent(s) promoting Defendant's products/services; (b) within a 12-month period; (d) more than 30 days their phone number was registered on the National Do Not Call Registry; (e) between July 15, 2017, and the certification of the Class.

45. Excluded from the class are (a) Defendant and its agents, subsidiaries, parent companies, and related entities, (b) the presiding judge and his or her courtroom staff and immediate family; and (c) the undersigned counsel, their staff and employees, and their immediate families. Plaintiff reserves the right to modify the definition of the Class as warranted through further investigation and discovery.

46. **Numerosity:** Plaintiff does not know the number of Class Members at this time, but, upon information and belief, as well as the investigation of her attorneys, believes there are thousands of Class Members, and that the number of Class Members is otherwise too numerous such that joinder would be impracticable. Thus, "numerosity" within the meaning of Rule 23(a)(1) is satisfied here.

47. **Commonality:** commonality in questions of law and fact within the meaning of Rule 23(a)(2) is established. Questions of law or fact subject to common resolution include:

   a. Whether the text messages delivered by Allstate and/or its agents constitute telemarketing messages within the meaning of the TCPA and implementing regulations;

   b. Whether Plaintiffs and the Class members were damaged by TCPA violations;

   c. Whether Allstate is liable for the actions of its agents for the delivery of telemarketing text messages sent on behalf and to the benefit of Allstate;

   d. Whether Plaintiffs and the Classes are entitled to damages and/or any other relief.

48. **Typicality**: Plaintiff's claim is typical of Class Members' claims because the claims are all based on the same legal theory and allege the same injury. Plaintiff and Class Members were all injured as a result of Allstate's (knowing and intentional) violations of the TCPA. Plaintiff's and Class Members' claims are subject to the same affirmative defenses, meritorious or not, within the meaning of Rule (23)(a)(3). Thus, the typicality requirement is satisfied here.

49. **Adequacy**: Plaintiff and her counsel will fairly and adequately represent and protect the interests of the Class. Plaintiff possesses no interests antagonistic to any other member of the Class, and there is no danger that an outcome beneficial to some class members would be detrimental to others. Moreover, the undersigned are experienced and successful class action litigators, and have been class counsel in numerous class actions throughout the country, including TCPA actions. The undersigned have extensive experience in TCPA litigation at both the trial and appellate levels. As such, Plaintiff and her counsel will be adequate representatives of the Class within the meaning of Rule 23(a)(4).

50. The previously-identified common issues of law and fact will predominate over any individualized questions within the meaning of Rule 23(b)(3). All major issues in this litigation are common to the Class and are subject to common proof.

51. Moreover, a class action is the best method for the fair and efficient adjudication of this controversy. The interest of Class members to individually

control the prosecution of separate claims against the Defendants is small due to the minimal nature of the maximum statutory damages ($500.00-$1,500.00) compared to the costs and expenses necessary to prosecute a claim against one of the largest insurance companies in the world. Because, *inter alia*, Class Members can be identified based on objective criteria—including criteria found within the business records of Defendant and/or its agents—class treatment of the claims will be far more manageable when compared to management of thousands of individual claims. Thus, adjudication of this action on a class-wide basis is superior to any alternative form of adjudication.

## **CLAIM FOR VIOLATIONS OF 47 U.S.C. § 227(c)**

52. Plaintiffs fully incorporates by reference paragraphs 1 to 51.

53. Defendant placed, or caused to be placed by its actual and/or apparent agents, more than one telemarketing call to the telephone numbers of Plaintiff Rita Miller and members of the Class without sufficient prior consent.

54. Each call was placed more than 30 days after Plaintiff and Class Members respectively had registered respective phone numbers with the national DNC Registry.

55. The telephone numbers the Defendants called were assigned to a cellular telephone service.

56. Defendants' conduct violated the TCPA, 47 U.S.C. § 227(c)(5) and its implementing regulations 47 C.F.R. 64.1200(c)-(f), which were designed to protect against invasions of privacy and intrusions upon seclusion.

57. As a result of Defendant's conduct and/or the conduct of their agents on Allstate's behalf and to Allstate's benefit, which was ratified by Allstate, Plaintiff and Class Members have suffered statutory and actual damages, and, under 47 U.S.C. § 227(c)(5)(B), are each entitled, *inter alia*, to a minimum of $500.00 in damages for each such violation of the TCPA, as well as declarative and injunctive relief.

58. If such violations are determined to knowing and/or willful, the Court should exercise its discretion to treble statutory damages pursuant to § 227(c)(5).

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff and Class Members the following relief against Defendant:

- An Order certifying this case as a Class Action, appointing Plaintiff Rita Miller as class representative and, pursuant to Fed. R. Civ. P. 23(g), appointing the undersigned as Class Counsel;
- $500.00 in statutory damages for each and every violation pursuant to 47 U.S.C. § 227(c)(5);
- If violations are determined to be knowing and/or willful, trebling such statutory damages;
- An Order declaring that Defendant's actions and/or the actions of Defendant's agents violated the TCPA;

- An Order enjoining Defendant from all unsolicited telemarketing calls placed to consumers whose phone numbers are registered on the DNC registry;
- Pre- and post-judgment interest;
- Any other relief the Court deems just and proper.

## TRIAL BY JURY

Plaintiffs demand a trial by jury of all issues so triable.

Dated: July 26, 2021.                                          Respectfully submitted,

By:   /s/ Jacob Phillips
Jacob Phillips, Esq.
FBN: 120130
Edmund A. Normand, Esq.
FBN: 865590
Amy L. Judkins, Esq.
FBN: 125046
**NORMAND PLLC**
3165 McCrory Place, Ste. 175
Orlando, Florida, 32801
Phone: 407-603-6031
Fax: 888-974-2175
Jacob.phillips@normandpllc.com
Ed@ednormand.com
Amy.judkins@normandpllc.com
ean@normandpllc.com

***Counsel for Plaintiff
and the Putative Class***